UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ETHEL REED,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security
Administration,[1]

                Defendant.

CASE NO. 3:16-CV-05675-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

denial of Plaintiff's application for Supplemental Security Income ("SSI") benefits. The parties

have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed.

R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

United States Magistrate Judge, Dkt. 7.

---

[1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting
Commissioner of Social Security. Fed. R. Civ. P. 25(d).

1   After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

2   erred by failing to further develop the record with IQ testing before evaluating whether Plaintiff

3   met or equaled the requirements of a Listing contained in the Listing of Impairments ("Listing").

4   Therefore, this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g),

5   for further proceedings.

6   **PROCEDURAL& FACTUAL HISTORY**

7   On August 21, 2012, Plaintiff filed her third application for SSI. *See* Dkt. 9, Administrative

8   Record ("AR") 244-52. Plaintiff had previously filed two applications for SSI; both applications

9   were denied, and Plaintiff failed to pursue either application past the ALJ level. AR 121-40, 146-

10   50.

11   In her third application, Plaintiff alleges she became disabled on September 1, 2006, due to

12   lumbar radiculopathy, depression, anxiety, carpal tunnel, and other back-related impairments. *See*

13   AR 244, 268.  Plaintiff's application was denied upon initial administrative review and on

14   reconsideration. *See* AR 181, 185. A hearing was held before an ALJ on May 15, 2014, at which

15   Plaintiff, represented by counsel, appeared and testified. *See* AR 82.

16   On October 10, 2014, the ALJ found Plaintiff was not disabled within the meaning of

17   Section 1614(a)(3)(A) of the Social Security Act. AR 37. Plaintiff's request for review of the

18   ALJ's decision was denied by the Appeals Council on May 27, 2016, making that decision the

19   final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R.

20   § 404.981, § 416.1481. On July 14, 2015, Plaintiff filed a complaint in this Court seeking judicial

21   review of the Commissioner's final decision.

22   Plaintiff argues the denial of benefits should be reversed and remanded for further

23   proceedings, because the ALJ erred by: 1) failing to further develop the record concerning

24

Plaintiff's learning disability, and otherwise failing to find Plaintiff met the requirements of Listing 12.05; 2) improperly discounting the opinions of one treating nurse practitioner, one treating physician's assistant, and one examining psychologist; and 3) improperly discounting her subjective symptom testimony. Dkt.12, pp. 1-2.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

**DISCUSSION**

I.      Whether the ALJ Erred by Failing to Find Plaintiff Met the Requirements of Listing 12.05.

Plaintiff argues the ALJ erred by improperly finding Plaintiff did not meet the requirements of Listing 12.05, Intellectual Disability.

The ALJ has the responsibility to determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in a Listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). *See also Caine v. Astrue*, 2010 WL 2102826, at *6 (W. D. Wash. April 14, 2010). The Listings describe specific impairments that are considered "severe enough to prevent an individual from doing any gainful activity regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The majority of mental health listings analyze the degree of restriction across four factors included in paragraph B of each listing:

activities of daily living; maintaining social functioning; concentration, persistence, and pace; and whether there are repeated episodes of decompensation, each of extended duration.[2]  However, Listing 12.05 requires an ALJ to make alternative findings. In the introductory paragraph to Listing 12.05, intellectual disability is defined as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016). The listing further specifies the required level of severity is met if a claimant meets the criteria enumerated in one of the following four paragraphs:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> > 1. Marked restriction of activities of daily living; or
> > 2. Marked difficulties in maintaining social functioning; or
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> > 4. Repeated episodes of decompensation, each of extended duration.

---

[2] Effective January 17, 2017, these four factors have been replaced with the following: a claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(b)(3) (2017).

1   20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016).[3]

2          Plaintiff argues the ALJ's analysis of Listing 12.05 was deficient in two ways. First,

3   Plaintiff argues the ALJ failed to follow his duty to develop the record and obtain IQ testing before

4   evaluating whether Plaintiff satisfied the requirements of paragraphs B or C of Listing 12.05.

5   Second, Plaintiff argues the ALJ failed to analyze whether Plaintiff met the criteria for the

6   introductory paragraph of Listing 12.05.

7          The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v.*

8   *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). This duty

9   exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 411, 443 (9th

10  Cir. 1983).  But, "[a]n ALJ's duty to develop the record further is triggered only when there is

11  ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

12  evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Where an ALJ relies on a

13  medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop

14  the record further. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). By contrast,

15  where the record, taken as a whole, is adequate to evaluate a claimant's alleged impairment, the

16  ALJ's duty to develop the record is not implicated. *See, e.g.*, *Baghoomian v. Astrue*, 319

17  Fed.Appx. 563, 566 (9th Cir. 2009); *H'Oar v. Barnhart*, 51 Fed.Appx. 731, 732 (9th Cir. 2002).

18         Here, the ALJ concluded Plaintiff had the severe impairment of a learning disorder, not

19  otherwise specified. AR 25. Further, the ALJ expressly considered whether Plaintiff met the

20  _____

21         [3] As with the other mental health listings, effective January 17, 2017, the Listing 12.05
    criteria have been amended. Further, on remand, the ALJ will be required to apply the amended
22  criteria in Listing 12.05. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81
    Fed.Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016) (amending 20 C.F.R. §
23  404.1520a(b)(3)). Nonetheless, Social Security regulations indicate IQ scores remain the
    preferred method for determining whether a person has demonstrated significantly subaverage
24  general intellectual functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1(H)(2)(a) (2017).

1  criteria for Listing 12.05. AR 26-27. However, the ALJ's analysis focused exclusively on the

2  aspects of Listing 12.05 which overlap with the Paragraph B criteria identified in Listings 12.04

3  and 12.06. AR 26. The ALJ did not consider the introductory paragraph of Listing 12.05, nor did

4  the ALJ consider whether Plaintiff had a full-scale IQ score low enough to satisfy the requirements

5  of paragraphs B or C in Listing 12.05. AR 27. This was error.

6      The Ninth Circuit case *Garcia v. Comm'r, Soc. Sec. Admin.*, (768 F.3d 925 (9th Cir.

7  2014)), is instructive. In *Garcia*, the ALJ found the claimant had the severe impairment of

8  "borderline intellectual functioning" but the ALJ relied upon a performance IQ score of 77 in the

9  record to conclude the claimant did not meet the requirements of Listing 12.05. *Id.* at 929.

10  However, while the claimant had a valid *performance* IQ score of 77, the claimant never

11  completed the testing due to time constraints; consequently, the claimant did not have a valid

12  verbal or full-scale IQ score in the record. *Id.* at 927. The Ninth Circuit concluded the ALJ erred by

13  relying solely on the performance IQ score, as Listing 12.05 indicates "[i]n cases where more than

14  one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full

15  scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with

16  Listing 12.05." *Id.* at 931-32. More broadly, the Ninth Circuit noted that "IQ testing plays a

17  particularly important role in assessing the existence of intellectual disability." *Id.* at 931. Thus,

18  when a case turns on the question of whether a claimant has an intellectual disability, the Ninth

19  Circuit held a complete set of valid IQ scores are an essential part of a "'full and fairly

20  develop[ed]' record" *Id.* at 930 (internal citations omitted).

21      The material facts of this case are very similar to the facts presented to the Ninth Circuit in

22  *Garcia*. Here, the ALJ found Plaintiff had a learning disorder as a severe impairment at Step Two.

23  AR 25. Further, Plaintiff's counsel argued at both the May, 2014 hearing and at the hearing on her

24

1 | prior application that Plaintiff's learning disorder was a disabling impairment, and suggested

2 | additional medical opinions may be necessary. AR 53, 70, 89-91. A 2005 medical opinion by Dr.

3 | Luci Carstens, Ph.D., recommended Plaintiff undergo IQ testing. AR 383.[4] Finally, the ALJ

4 | indicated he considered whether Plaintiff satisfied the requirements of Listing 12.05, and

5 | referenced Listing 12.05 multiple times throughout his Step Three analysis, but concluded Plaintiff

6 | failed to satisfy paragraphs B or C of the listing because Plaintiff "does not have a valid verbal,

7 | performance, or full scale IQ of 70 or less." AR 26-27. However, a review of the record as a whole

8 | reveals the ALJ reached this conclusion based on the absence of any IQ tests in the record, rather

9 | than by reference to a valid IQ score greater than 70. As the ALJ recognized Listing 12.05 would

10 | be applicable to this case, the absence of IQ scores in the record triggered the ALJ's duty to

11 | develop the record and obtain IQ testing before evaluating the Listing 12.05 criteria. *See Garcia*,

12 | 768 F.3d at 930-31; *Beggs v. Colvin*, 2016 WL 1417383, at *5-6 (D. Or. Apr. 11, 2016).

13 |        Plaintiff also correctly argues the ALJ failed to discuss whether Plaintiff satisfied the

14 | criteria enumerated in the introductory paragraph of Listing 12.05. Plaintiff offered evidence she

15 | attended special education classes, did not graduate from high school, and has been unable to

16 | obtain a GED. AR 91. *See Also* AR 336, 383-87. This potentially constitutes evidence Plaintiff had

17 | "deficits in adaptive functioning [which] initially manifested during [Plaintiff's] developmental

18 | period." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016). *See Hernandez v. Astrue*, 380 Fed.Appx.

19 | 699, 700-01 (9th Cir. 2010); *Sorter v. Astrue*, 389 Fed.Appx. 620, 621-22 (9th Cir. 2010).

20 |

21 | ————————————

22 |     [4] The ALJ indicated he did not consider this medical opinion as the prior administratively final decision "has already adjudicated the claimant's residual functional capacity between May

23 | 5, 2003 and April 22, 2011." AR 34, n. 3. However, the prior ALJ decision did not consider Dr. Carsten's opinion concerning whether IQ testing would be appropriate, nor did the prior ALJ

24 | decision consider whether Plaintiff met the requirements of listing 12.05. AR 127-28, 131.

1    Because the ALJ failed to develop the record with IQ testing, and because the ALJ failed to

2    consider whether Plaintiff satisfied the introductory paragraph of Listing 12.05, the ALJ erred.

3    Further, such error is not harmless. As the Ninth Circuit noted in *Garcia*, the availability of IQ

4    scores in the record which could be considered by multiple reviewing experts, as well as the ALJ,

5    "makes it particularly difficult to conclude that any error affecting the quality of those results is

6    'inconsequential to [an] ultimate nondisability determination' . . . ." *Garcia*, 768 F.3d at 933

7    (*quoting Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).  Thus, the ALJ committed

8    harmful error, requiring remand.

9    II.    Other Assignments of Error.

10    Plaintiff also assigns error to several other aspects of the ALJ's decision. As the case must

11    be remanded in any event, the Court need not address these allegations in great detail. Nonetheless,

12    to aid in the efficient disposition of this case on remand, the Court will briefly address Plaintiff's

13    remaining assignments of error.

14    **A.  Whether the ALJ Erred in Evaluating the Medical Opinion Evidence**

15    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

16    opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821,

17    830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*,

18    908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining

19    physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth

20    specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v.*

21    *Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can

22    accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

23    clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

24

1  F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

2  explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

3  157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant

4  probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

5  (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

6  F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding

7  [such] evidence." *Flores*, 49 F.3d at 571.

8       Plaintiff argues the ALJ erred in evaluating the opinions of one of Plaintiff's treating nurse

9  practitioners (Rebecca Welch, ARNP), one of Plaintiff's treating physician's assistants (Giang Vu,

10  PA-C), and one of Plaintiff's examining psychologists (David Widlan, Ph.D.). However, the ALJ

11  offered legally sufficient[5] reasons supported by substantial evidence for discounting their opinions.

12  For example, the ALJ properly discounted the opinions of Ms. Welch by noting they were

13  unsupported by any objective evidence, and were inconsistent with Ms. Welch's physical

14  examination findings. AR 33, 316. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th

15  Cir. 2004) (*citing Tonapetyan*, 242 F.3d at 1149); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

16  2002). The ALJ also properly discounted the opinion of Ms. Vu by reference to the fact that,

17  despite opining Plaintiff would be limited to sedentary activity, and moderate-to-marked

18  limitations due to Plaintiff's carpal tunnel syndrome and lumbago, Plaintiff: 1) reported to Ms. Vu

19  _____

20       [5] While the ALJ was required to offer specific and legitimate reasons to discount the
    opinion of an examining psychologist, both nurse practitioners and physician's assistants are
21  considered "other sources" rather than "acceptable medical sources" under Social Security
    regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) & (3). Thus, an ALJ only needs to provide
22  arguably germane reasons to reject their testimony. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th
    Cir. 2012); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v. Apfel*,
23  236 F.3d 503, 511 (9th Cir. 2001). 20 C.F.R. § 404.1513(d). *See also* Social Security Ruling
    ("SSR") 06-03p, at *5, *available at* 2006 WL 2329939; *Garrison v. Colvin*, 759 F.3d 995, 1013-
24  14 (9th Cir. 2014).

1    that she was experiencing no more than mild pain in her back and wrist on Ms. Vu's examination;

2    2) exhibited largely normal range of motion in her hands (except for reduced extension bilaterally);

3    and 3) demonstrated intact sensation and good hand grip.  AR 320, 331.  *See Batson*, 359 F.3d at

4    1194. Finally, the ALJ properly discounted the opinion of David Widlan, Ph.D., by noting his

5    opinion was inconsistent with contemporaneous mental health records. AR 35. For example, the

6    ALJ noted Plaintiff displayed "no unusual anxiety or evidence of depression," and was prescribed

7    Zoloft less than a month prior to Dr. Widlan's evaluation, but subsequently reported to Dr. Widlan

8    that she was not on psychiatric medication or undergoing mental health treatment. AR 305, 324-26.

9    These were specific and legitimate reasons for giving these medical opinions less than full weight.

10           Nonetheless, on remand, the ALJ will be required to develop the record with IQ testing.

11   Thus, even if Plaintiff ultimately does not satisfy the requirements of a listing, the ALJ necessarily

12   need to reevaluate the medical opinion evidence on remand.

13       **B.   Whether the ALJ provided Specific, Clear and Convincing Reasons,
              Supported by Substantial Evidence, for Discounting Plaintiff's Subjective
14            Symptom Testimony**

15           If an ALJ finds a claimant has a medically determinable impairment which reasonably

16   could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

17   ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons."

18   *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918

19   (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving

20   conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d

21   639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun*

22   *v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation

23   concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district

24

court may not second-guess the ALJ's credibility determinations. *Fair,* 885 F.2d at 604. *See also Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

Plaintiff argues the ALJ erroneously discounted her testimony based on an incorrect premise. Specifically, Plaintiff argues the ALJ incorrectly believed the medical records did not support Plaintiff's allegations, and that Plaintiff inconsistently reported her symptoms. Dkt. 12, p. 17. However, the ALJ actually offered five reasons for discounting Plaintiff's testimony: 1) improvement in Plaintiff's symptoms with medication; 2) inconsistent reports of psychological symptoms to her providers; 3) inconsistent statements about other issues; 4) Plaintiff's apparent use of prescription medications without valid prescriptions; and 5) inconsistencies between Plaintiff's testimony and her reported activities of daily living. AR 29-33. Defendant correctly observes Plaintiff makes no argument as to why the majority of these reasons were not clear and convincing reasons, supported by substantial evidence. Plaintiff has the burden of demonstrating harmful error in the ALJ's decision. *Shinseki v. Sanders,* 556 U.S. 396, 410 (2009). Arguments not raised with specificity in a party's opening brief are waived. *See also Greger v. Barnhart,* 464 F.3d 968, 973 (9th Cir. 2006), *Bisuano v. Colvin,* 584 Fed.Appx. 512, 514 (9th Cir. 2014). Thus, even assuming the ALJ's reasons were unsupported by substantial evidence, Plaintiff has waived her challenge on appeal.

1         However, as the case must be remanded for the ALJ to obtain IQ testing, the ALJ should

2   re-evaluate Plaintiff's subjective symptom testimony on remand. Further, on remand, the ALJ

3   should analyze Plaintiff's subjective symptom testimony using the revised policy articulated in

4   SSR 16-3p, *available at* 2016 WL 1119029. *See Folsom v. Colvin,* 2016 WL 6991194, n. 10 (C.D.

5   Cal. Nov. 29, 2016).

6                                       **CONCLUSION**

7         Based on the above stated reasons and the relevant record, the Court finds the ALJ

8   committed harmful error by failing to develop the record concerning Plaintiff's IQ scores, and

9   otherwise failing to properly evaluate whether Plaintiff met or equaled the requirements of Listing

10   12.05- Intellectual disorders. Therefore, the Court orders this matter be reversed and remanded,

11   pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings. On remand, the ALJ

12   should obtain IQ testing and—if necessary—medical opinion evidence concerning Plaintiff's IQ

13   scores, evaluate whether Plaintiff meets the requirements of a Listing, re-evaluate the medical

14   opinion evidence, re-evaluate Plaintiff's subjective symptom testimony, reassess Plaintiff's

15   residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential

16   evaluation, as appropriate. The ALJ should also develop the record as needed. Judgment should be

17   for Plaintiff and the case should be closed.

18         Dated this 21st day of February, 2017.

19

20                                 David W. Christel

21                                 United States Magistrate Judge

22

23

24